IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH KENTON MCGOWEN, | § | |
| TDCJ-CID NO.1090641, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-09-3870 |
| | § | |
| BRAD LIVINGSTON, et al., | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER ON DISMISSAL

Plaintiff Joseph McGowen is a former Harris County Deputy
Sheriff, serving a twenty-year sentence for murder. McGowen v.
State, No.01-02-00416-CR, 2003 WL 21299950 (Tex. App.–Houston [1st
Dist.] 2003, pet. ref'd) (not designated for publication); McGowen v.
Quarterman, Civil Action No.H-07-0655 (S.D. Tex. Mar. 26, 2008).  In
November 2009, plaintiff filed a *pro se* complaint under 42 U.S.C.
§ 1983, alleging that prison officials at various units of the Texas
Department of Criminal Justice-Correctional Institutions Division
("TDCJ-CID") engaged in a conspiracy to violate his civil rights.
Per the Court's Order, he filed two More Definite Statements of his
claims.[1]  Plaintiff seeks compensatory and punitive damages, and
declaratory and injunctive relief from defendants in their official
and individual capacities.[2]

Defendants Aftab Ahmad, Mark Clarke, Michael Edison, Ronald
Givens, Brad Livingston, Thomas Merchant, Kenneth Negbenebor, Andres

---

[1] Docket Entries No.11, No.56.

[2] Docket Entries No.1, page 23, No.4.

Pizana, David Rice, Weldon Roberts, Tony Samaniego, Mark Scheuerman, Edward Smith, Rick Thaler, and Pamela Williams have filed a motion for summary judgment,[3] to which plaintiff has filed a response.[4] For reasons to follow, the Court will grant defendants' motion for summary judgment.

The Court did not order service of process on defendants Cary Staples, K. Steifer, Cynthia Tilley, Michael Jackson, FNU Pittman, Patricia Demerson, FNU Thompson, Carolyn Stephens, Michael Edison, Virginia Bauer, Martha Burgess, Frank Anizan, FNU Herndanez, John M. Moriarty, FNU Pittman, FNU Romano, Mark Cole, Owen W. Murray, Dougals Appel, or Melinda Bozarth. The Court will dismiss claims against these defendants pursuant to 28 U.S.C. § 1915A.

## I. BACKGROUND

In several lengthy pleadings, plaintiff weaves a detailed account of his life as an incarcerated ex-law enforcement officer, recalling specific conversations with guards, administrators, investigators, medical personnel and family members. Plaintiff attributes all of his problems to Pack I Unit's Major David Rice, with whom he had issues after plaintiff was denied release to parole and a hardship transfer.[5] At that time, plaintiff informed Pack I Unit officials about an inmate-money laundering ring, which

---

3  Docket Entry No.65.

4  Docket Entries No.75, No.83.

5  Docket Entry No.11-1, pages 20-25.

purportedly involved prison staff and a TDCJ administrator. TDCJ-CID's Office of the Inspector General ("OIG") launched an investigation. Because of Rice's harassment, plaintiff feared that Rice would disclose plaintiff's involvement in the investigation to the inmate money-launderers.[6] After he was threatened by one of the inmates, plaintiff was placed in administrative segregation ("ad-seg") pending an offender protection investigation ("OPI").[7] In early December 2007, plaintiff met with one of the OIG investigators; Rice escorted plaintiff to his cell after the meeting. Plaintiff claims that Rice attacked him en route to the cell.[8]

In mid-December mail room staff intercepted a letter from plaintiff, in which plaintiff told of a solicitation to murder Rice by another inmate. Shortly after being charged with a disciplinary conviction for threatening Rice, plaintiff sought medical treatment for his injuries; plaintiff was convicted of a violation.[9] The OIG's investigation of the murder solicitation case was later closed for insufficient evidence to support plaintiff's claims.[10] Months later, after plaintiff wrote to a TDCJ administrator about the alleged assault, the OIG opened an investigation of plaintiff's assault

---

6  Id. pages 22-24.

7  Docket Entry No.11-2, page 8.

8  Docket Entry No.11-1, page 30.

9  Docket Entry No.11-5, pages 21-22; No.81-2, page 19.

10 Docket Entries No.11-2, page 4; No.67, Exhibits B-4, B-5; No.81-2, page 18.

allegation against Major Rice. The investigation was later closed for want of evidence to substantiate his claims.[11]

Plaintiff was transferred to the Stevenson Unit via the Darrington Unit, where he was incarcerated for almost a month. Plaintiff claims that while there, he was denied a shower, clean clothing, and food for several days.[12] He also claims that he was placed in solitary confinement, where he was sexually assaulted by three black inmates and three Nigerian guards.[13] He claims that an OIG investigator on the Unit attempted to recruit him as an informant and later offered to have plaintiff transferred to a federal prison for a million dollars.[14]

When plaintiff reached the Stevenson Unit, he advised staff and administrators of all that he had allegedly suffered on the Pack I and Darrington Units; some staff members promised to assist him but he later learned that everyone had been told not to help him. He claims Major Rice began to read his mail.[15] Plaintiff complains that he suffered verbal abuse from guards but Unit administrators did nothing to stop the reported abuse.[16] In July 2008, plaintiff

___

11 Docket Entries No.11-9, pages 23-26; No.67, Exhibit B-1.

12 Docket Entries No.11, pages 24-25; No.11-3, page 22.

13 Docket Entries No.11-3, page 22; No.56, page 5. Plaintiff does not allege that Darrington Unit officials were aware of the threat that he might be sexually assaulted and failed to protect him from such acts.

14 Docket Entries No.11, page 28; No.11-5, page 24.

15 Docket Entry No.11-2, pages 18-20.

16 Docket Entries No.11, pages 14-15; No.11-1, pages 13-14; 11-3, pages 23-24, 30; No.11-4, page 16; No.11-4, pages16-18; No.1-2, pages 7-10.

4

reported to prison officials that his family had been threatened, allegedly by inmates and prison staff involved in the money-laundering scheme on the Pack I Unit. Plaintiff was informed that an OIG investigation would not be conducted and his family should contact local law enforcement agencies. Plaintiff surmised that Major Rice had given to the money-launderers plaintiff's list of family phone numbers, which resulted in these threats.[17]

Plaintiff also complained of his housing and job assignments while on the Stevenson Unit without much success, although he was later assigned to the medical squad.[18] Plaintiff claims in March 2009, he was assaulted by Sgt. Andres Pizana as Pizana escorted him to the security office; other officers, including Lt. Thompson, witnessed the assault but did nothing to help him. Plaintiff claims he reported the assault two days later to prison officials on the Jester III Unit, where he had gone for a physical therapy consultation.[19]

Plaintiff claims on the return trip home, he was left on the bus for several hours with an inmate, whom he had helped to send to prison. Although the inmate was abusive and threatening, prison officials did nothing to secure him.[20]

---

17 Docket Entries No.11, page 10; No.11-2, pages 14, 25; No.11-3, page 14; No.67, Exhibits B-3, B-4, C-8, C-9.

18 Docket Entries No.11, page 16; No.11-2, pages 28, 30; No.11-4, pages 16, 24-26.

19 Docket Entries No.11-3, pages 5, 9; No.11-4, pages 18-23.

20 Docket Entry No.11-3, page 5; No11-4, pages 1; No.11, page 22.

In mid-April 2009, plaintiff was transferred to the Jester III Unit for physical therapy. He again shared his story of the abuse that he allegedly suffered on the Pack I, Darrington, and Stevenson Units with staff and administrators. Plaintiff claims he was told not to speak of these matters or to disclose that he had been a police officer; plaintiff thought this was an attempt to conceal the issues.[21] Plaintiff claims he was later told that he had angered TDCJ administrators and that no one would help him.[22] Plaintiff complains that while on this Unit, he was housed with psychotics, trouble-makers, and black militant Muslims,[23] given job assignments that violated his medical restrictions and were dangerous to perform given his visual issues,[24] placed in ad-seg per a bogus OPI,[25] and harassed as he tried to go to the commissary.[26] Plaintiff claims he filed grievances complaining of all of these issues, but Lt. Edison destroyed them.[27] Plaintiff also claims that he reported all of these abuses to Unit administrators but they did nothing to help him.[28]

---

21 Docket Entry No.11-3, pages 6-7.

22 Docket Entry No.11-3, pages 7-8.

23 Docket Entry No.11-3, pages 12-13, 25-27.

24 Docket Entry No.11-5, pages 28-30; No.11-5, pages 3-5.

25 Docket Entries No.11-1, pages 15-17; No.11-3, page 8.

26 Docket Entries No.11-4, pages 2-4; No.11-3, page 25.

27 Docket Entries No.11-4, pages 4-9; No.11-1, pages 17-18.

28 Docket Entries No.11-3, pages 25-27;11, pages 30-38; No.11-1, pages 1-3; No.11-4, pages 10-12; No.11-4, pages 1-12.

Plaintiff claims that in early December 2009, he was threatened by an inmate in front of guards; in mid-February, he sent an I-60 to three administrators expressing his fear of this inmate.[29] Plaintiff claims that within days of submitting the I-60s, the inmate attacked him. Plaintiff was given a disciplinary case for fighting, placed in ad-seg pending an OPI, and later transferred to another unit.[30]

Plaintiff's pleadings reflect several common themes. Plaintiff was fearful for his safety given his law-enforcement background and a widely publicized account of his criminal offense, about which he claims that prison officials on each unit were aware. On the Stevenson and Jester III Units, he expressed his fear of black Muslim inmates, whom he thought had a personal vendetta against him given his role in the money-laundering investigation. On each unit, plaintiff sought a hardship transfer or a transfer to a federal prison from prison administrators and others outside the prison system; he was repeatedly informed that he did not qualify for either transfer. Plaintiff surmised that he was mistreated, his transfers denied, or his pleas for assistance ignored because officers on each Unit were friends with Rice.

The record shows that the OIG investigated plaintiff's claims of a money-laundering ring, a solicitation to murder Rice, an assault by Rice, a threat by money-laundering inmates to harm him, a sexual assault by inmates and guards, and closed each investigation for want

---

29 Docket Entry No.56, pages 10-13.

30 Docket Entries No.14, page1; No.56, pages 10, 13.

of evidence to support his claims. The OIG has recently reopened the sexual assault investigation.[31]

## II. DISCUSSION

Defendants move for summary judgment on the ground that plaintiff has failed to show a violation of his constitutional rights and assert the defense of qualified immunity.[32] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." Hamilton v. Seque Software Inc., 232 F.3d 473, 477 (5th Cir. 2000) (quoting Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994)).

As to those defendants who were not served with process, the Court reviews plaintiff's pleadings pursuant to 28 U.S.C. § 1915A(a),

31 Docket Entry No.67, Exhibit C-3, pages 994-997; Exhibit C-4, pages 1111-1112, 1124; No.75-2, page 9.

32 Docket Entry No.65.

8

which requires that the Court to identify cognizable claims or dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915A(b). A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).

## A. Claims for Monetary Damages

### 1. Compensatory Damages

Plaintiff's claims for monetary damages from all defendants in their official capacities as employees of state agencies are barred by the Eleventh Amendment. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).

Plaintiff, however, may seek compensatory damages under § 1983 from a defendant in his or her individual capacity for the pain and suffering he has endured, but he must show that he has suffered a physical injury directly attributable to the defendant's acts or

9

omissions. 42 U.S.C. § 1997e(e); <u>Geiger v. Jowers</u>, 404 F.3d 371, 375 (5th Cir. 2005). The well established Eighth Amendment standards guide the analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering, i.e., the injury must be more than *de minimis*, but need not be significant. *See* <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997) (a sore, bruised ear lasting for three days was *de minimis*).

        a. <u>Excessive Force</u>

Plaintiff claims that he suffered physical injuries from the use of excessive force by Major Rice and Sergeant Pizana but the record does not support his allegation that either assault occurred. To prevail on an excessive force claim, the inmate must "prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" <u>Wilkins v. Gaddy</u>, 130 S. Ct. 1175, 1180 (2010) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)).

Plaintiff claims that he suffered a dislocated jaw and right shoulder, a tear to his right rotator cuff, an injury to his neck and a cut on his cheek from the alleged assault by Major Rice in December 2007.[33] Medical personnel, who examined him on three occasions, found no visible signs of a shoulder or neck injury and an x-ray on

---

[33] Docket Entry No.11-1, page 30.

December 27, 2007, showed no jaw injury.[34] No Use of Force Report was generated; an OIG investigation of the assault case was closed based on Major Rice's statement that he did not assault plaintiff, plaintiff's statement that no one witnessed the actual attack, and the absence of medical documentation to support plaintiff's alleged injures.[35]

Plaintiff claims on March 29, 2009, he suffered a deep gash on his right thumb and left fourth digit, deep scratches on his left elbow, left lower biceps and upper forearm, and a dislocated left shoulder from the alleged assault by Sgt. Pizana.[36] Plaintiff did not seek medical care on the Stevenson Unit; he claims he reported the attack to Jester III Unit's staff and medical personnel two days later,[37] but officials on the Jester III Unit have no record of such report and no record of treatment for such injuries.[38] Once back at the Stevenson Unit, plaintiff reported the alleged assault in a Step 2 grievance dated April 2, 2009.[39] On April 6, 2009, he reported the assault to a nurse on the Stevenson Unit; photographs and plaintiff's

---

34 Docket Entry No.67, Exhibit C-7, pages 1413-1414, 134-37, 1439; No.81-2, pages 58-59.

35 Docket Entries No.67, Exhibits B-4, B-5; No.81-2, page 18. Cole also prepared an Offense/Investigative Report, dated September 4, 2008, in which he summarized the investigation and noted the case closure. Docket Entry No.67, Exhibit B-1.

36 Docket Entry No.11-4, page 20; No.56, page 8.

37 Docket Entries No.1-3, page 6; No.11-4, page 20; No.56, page 8.

38 Docket Entries No.1-3, page 6; No.67, Exhibit C-5, page 1198.

39 Docket Entry No.1-3, page 6.

statement were taken.[40] Plaintiff does not indicate, and the record does not show, that he received any medical treatment for the alleged injuries.

Although plaintiff claims that numerous guards and inmates witnessed the alleged assault, no Use of Force Report was generated.[41] Unit grievance officers, who investigated plaintiff's Step 2 complaint of the Pizana assault, found that "the injuries [plaintiff] received resulted when attempting to open a bus window while enroute to Darrington from Jester III."[42] His Step 2 grievance was denied for want of evidence to substantiate his allegation of excessive force.[43]

Plaintiff presents no evidence to contravene the record, which does not show that an assault actually occurred; therefore, plaintiff is not entitled to compensatory damages on his excessive force claims.

        b.   Failure to Protect

Plaintiff complains of numerous instances, in which defendants failed to protect him from other inmates as he thought appropriate,

---

40 Docket Entries No.11-4, page 22; No.67, Exhibit C-5, pages1214-1218; No.75-5, page 3-10.

41 Docket Entry No.11-4, page 21.

42 Docket Entry No.1-3, page 6; Docket Entry No.67, Exhibit C-5, page 1198.

43 Id. Two inmates who traveled with plaintiff to the Jester III Unit did not recall any injuries to plaintiff when they departed the Stevenson Unit. Docket Entry No.67, pages 1213, 1224. One inmate, who was handcuffed to plaintiff, stated that plaintiff cut his fingers about the knuckle when he attempted to close the bus window and that plaintiff told him that he scratched his arm on the bunk or on a screw in the chain bus. Id., pages 1213, 1223-24. Plaintiff alleges that "[s]omeone at TDCJ obviously spoke to the inmate to whom I was handcuffed on the bus, for while on the bus, as I opened the window, I bumped the cut on my thumb, causing the fresh wound to re-open and begin to again bleed." Docket Entry No.11-3, page 22.

but in most cases, he does not allege that he suffered a physical injury. A failure-to-protect claim that fails to allege any resulting physical injury does not state an Eighth Amendment violation entitling a prisoner to compensatory damages. See Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999). For this reason, the Court will not address these claims.

Prison officials have a duty to protect inmates from harm or violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). A prison official is liable only if he is deliberately indifferent to a substantial risk of serious harm. Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003). To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Deliberate indifference describes a state of mind "more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Id. at 835.

Plaintiff claims that in December 2009, an insane inmate threatened to kill him in front of two guards after he broke up a fight with another inmate.[44] Plaintiff claims that in February 2009, he filed an I-60 warning Assistant Warden Cynthia Tilley, Captain Patricia Demerson, and Classification Chief Martha Burgess of a threat by the same inmate; within days, the inmate severely beat, bit, kicked, and spat upon him, bloodied his face, and injured his

---

[44] Docket Entry No.56, page 10.

13

lower back and shoulder.[45]   Plaintiff did not file a grievance requesting an OPI and the I-60s are not in the record.  Plaintiff was placed in administrative segregation pending an OPI.[46]

Plaintiff suffered a small bite to his hand, which was "washed and cleaned with betadine."[47]   Days later, medical providers noted that his thumb had two areas of broken skin, no bleeding, no swelling, and no discharge; the injury was treated with an antibiotic.   Within days, the wound was healed.[48]   Plaintiff was placed in ad-seg, given a disciplinary conviction for fighting,[49] and transferred to the Ramsey Unit for protection.[50]

Plaintiff's pleadings do not state the specific threat that he conveyed to defendants Tilley, Burgess, or Demerson, and do not show

---

45 Id.  Plaintiff claims he filed an I-60 with Burgess two days before the attack.  Id., page 13.  The record shows that plaintiff indicated by grievance that two officers witnessed the inmate's threat in December 2009 and that he reported additional threats by the offender to Demerson and Tilley via I-60s on February 16, and 17, 2010.  Docket Entry No.67, pages 1148, 1154.  Plaintiff reported to prison investigators that he sent an I-60 to Burgess on February 15th, to Demerson on February 16th, and to Tilley on February 17th.  Docket Entry No.75-5, page 16.

46 Docket Entry No.56, page 20.

47 Docket Entry, No.67, pages 191, 1185.  Pre-segregation notes show that plaintiff denied any distress or discomfort and none was noted.  Id., page 191. Plaintiff also suffered a bloody nose.  Docket Entry No.75-5, page 17.

48 Docket Entry No.67, Exhibit A-8, page 181.   Three days later, medical providers noted that the tiny wound on the left thumb was dry and healed. Id.,page 173.

49 Plaintiff was charged with hitting the inmate in the stomach with his fists and grabbing the inmate's head and neck.  Docket Entry No.67, page 1156.  On February 19, 2010, Warden Tilley agreed with the investigator's findings and recommended that the investigation be forwarded to the UCC for a transfer. Docket Entry No.75-5, page 15.

50 Docket Entry No.56, pages 10-13; No.67, pages 1194; No.75-5, page 16. Plaintiff was recommended for protective custody status on April 27, 2010, but the recommendation was denied by the State Classification Committee.   He was transferred to the Boyd Unit.  Docket Entries No.67, Exhibit c-1, pages 847-859; No.75-9, page 16.

14

that they received the I-60s, which he claims were sent to them one or two days before the inmate assault. Likewise, his pleadings state no facts to show that defendants deliberately failed to take action. Even if they were aware of the immediate threat, plaintiff states no facts to show that their failure to take immediate action constitutes deliberate indifference that would entitle him to relief. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003). Accordingly, he fails to show that he is entitled to compensatory damages from defendants Tilley, Demerson, and Burgess on this claim.

     c.  <u>Job Assignment</u>

Plaintiff complains that defendants Dr. Aftab Ahmad,[51] Classification Chief Martha Burgess,[52] and Plant Manager Mark Scheuermann assigned him to jobs that he found difficult to perform and that exposed him to conditions that he feared would harm him because of his vision problems. The record, however, does not show that such jobs exceeded his medical restrictions or endangered him.

---

[51] Plaintiff complains that Dr. Aftab Ahmad, ignored his complaints of poor vision and his fear of harm when performing his assigned tasks of mopping and sweeping the floor due to his poor vision; Aftab refused to prescribe contacts or change plaintiff's job assignment. Docket Entry No.11-5, pages 28-29. Docket Entry No.56, page 19.

[52] Plaintiff claims in July 2009, Classification Chief Martha Burgess assigned him to work in the factory, folding sheets in violation of his medical restrictions. Docket Entry No.11-5, pages 3-4. He complained to Burgess and others of his fear of being injured because he was working around machinery and the abuse of his medical restrictions, but Burgess ignored his complaints. <u>Id.</u>, pages 4-5. In January 2010, Burgess assigned plaintiff to a job outside the factory. Docket Entry No.11-4, page 29.

A prison inmate has no constitutional right to a job of his choice and cannot base a civil rights action on general dissatisfaction with a job assignment. Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984). "[P]rison work requirements which compel inmates to perform physical labor which is beyond their strength, endangers their lives, or causes undue pain constitute cruel and unusual punishment." Howard v. King, 707 F.2d 215, 219 (5th Cir. 1983). A negligent assignment to work that is beyond the prisoner's physical abilities is not unconstitutional. Id. A mere disagreement about a work assignment does not amount to deliberate indifference. See, e.g., Douglas v. McCasland, 194 Fed. App'x 192 (5th Cir. 2006).

Plaintiff does not allege that he was injured while performing his janitorial duties under Dr. Ahmad, but from an unsafe condition in the infirmary caused by a spill to the floor.[53] Nor does plaintiff allege that he suffered a physical injury while folding sheets in the garment factory, a job assigned by Burgess and Scheuermann. Plaintiff does claim, however, that he suffered six deep cuts to his hands and two stab wounds from his work as a garment inspector, a job to which Burgess and Scheuerman assigned him in October 2009, and which required him to cut strings from sheets with sharp shears.[54] Plaintiff claims he accidentally cut himself with the shears.[55]

---

53 Docket entry No.11-5, page 29.

54 Docket Entry No.11-5, pages 4-5

55 Id., page 5.

16

Plaintiff does not indicate, and the record does not show, that the cuts required medical treatment. Plaintiff was seen by a physician's assistant on November 19, 2009, requesting to be medically unassigned due to his poor vision.[56] He reported that he had cut himself several times and that he feared he would cut himself badly if not taken out of his job, but he did not request treatment for the cuts.[57] The physician's assistant noted that plaintiff was seen twice in October 2009, with the same complaints; his restrictions were reviewed and temporary walking restrictions were added.[58] The restrictions on his Health Summary Sheet dated November 23, 2009, do not include restrictions against use of sharp objects.[59]

Likewise, the record does not show that any of plaintiff's jobs exceeded his medical restrictions. Dr. Steven Bowers, defendants' medical expert, attests that he found no documentation in the medical record that plaintiff informed Ahmad of his vision problems while working in the infirmary.[60] Bowers noted a sick call request on April 17, 2009, in which plaintiff requested to have his restrictions discontinued because he no longer needed them.[61] The record shows that Dr. Ahmad added work assignment restrictions to plaintiff's

---

56 Docket Entry No.67, Exhibit A-10, page 279.

57 Id.

58 Id. at 276, 279.

59 Id. at 276.

60 Docket Entry No.81-2, page 6.

61 Id.

17

Health Summary Sheet on July 8, 2009, shortly after plaintiff injured his knee from a slip and fall.[62]

On July 31, 2009, while working in the garment factory, plaintiff submitted an I-60 requesting that he be medically unassigned until his contact lenses were replaced.[63] Dr. Dumas examined plaintiff on August 3, 2009, and found "no indication for medical un-assignment; she added two permanent restrictions-sedentary work and no work around machines with moving parts.[64]

Without evidence contravening this record, plaintiff fails to show his entitlement to compensatory damages on his claims of deliberate indifference to his job assignments.

        d.   <u>Medical Care</u>

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must show a defendant was aware of facts from which an inference of an excessive risk to the prisoner's health could be drawn and that he actually drew an inference that such potential for harm existed. <u>Lawson v. Dallas County</u>, 286 F.3d 257, 262 (5th Cir. 2002).

---

62 Docket Entry No.67, Exhibit A-11, page 353.

63 Docket Entry No.67, Exhibit A-10, page 329.

64 <u>Id.</u>, Exhibit A-10, pages 324-25.

i.   Dr. Douglas Appel

Plaintiff complains that Optometrist Douglas Appel refused to prescribe replacement contact lenses[65] because in Appel's opinion, plaintiff did not need the contact lenses.  Instead, Appel prescribed eye glasses.[66]  Plaintiff was seen by optometry on January 31, 2008, and November 22, 2010, and diagnosed with Duane's Syndrome; eyeglasses were prescribed on both occasions.[67]  Plaintiff grieved the prescription because he wanted replacement contact lenses; he was informed in response that Dr. Appel "clearly and specifically documented that there is 'NO medical indication for contact lenses.'"[68]  Plaintiff was issued eyeglasses on December 15, 2010.[69]

Plaintiff's disagreement with Dr. Appel is not actionable.  A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice appropriately addressed under state law.  Estelle, 429 U.S. at 107-08; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

ii.   Dr. Aftab Ahmad

Plaintiff claims that he sought medical treatment after he injured his knee while working in the infirmary; Dr. Aftab Ahmad,

---

65 Docket Entries No.11-6, pages 1-2; No.56, page 18.

66 Docket Entries No.11-6, page 1; No.56, page 18.

67 Docket Entries No.75-10, page 29; No.67, Exhibit C-1, page 793.

68 Docket Entries No.75-11, page 1; No.67, Exhibit C-1, pages 792-803; No.A-10, page 320.

69 Docket Entry No.75-11, page 1.

19

however, provided only cursory examinations of the knee.[70]  Plaintiff claims that months later, he was seen by Dr. Handley, an orthopedic surgeon, via Tele-Med; Handley diagnosed him with a dislocated knee and other internal damage.[71]  Thereafter, plaintiff received intensive physical therapy for the knee injury.[72]  Plaintiff claims that Ahmad's delay in diagnosing and treating his knee injury has caused him permanent and debilitating damage to his right knee.[73]

Dr. Steven Bowers, defendants' medical expert, attests that Dr. Ahmad examined plaintiff on May 22, 2009, on complaints of decreased vision and an injury to his right knee, following a slip and fall.[74] The examination showed no swelling or movement difficulty; nevertheless, Dr. Ahmad ordered over-the-counter pain medication to help with pain and inflammation.[75]  The record and Dr. Bowers's affidavit show that on July 7, 2009, Dr. Ahmad examined plaintiff for several complaints, including right knee pain in the middle of his knee especially after prolonged activity.[76]  Dr. Ahmad noted no swelling, a full range of motion, and tenderness to the kneecap area; he ordered more pain medication and an x-ray, the results of which

70 Docket Entries No.11-5, page 29; No.56, page 19.

71 Docket Entries No.11-5, page 30; No.56, page 19.

72 Docket Entry No.11-5, page 30

73 Docket Entry No.11-6, page 1.

74 Docket Entry No.81-2, page 3.

75 Id.

76 Docket Entry No.81-2, page 3; No.67, Exhibit A-11, pages 354-55.  *See* restrictions page 353.

were normal.[77]   Plaintiff was seen by a physician's assistant in August 2009, who referred him to orthopedic surgery.[78]   Dr. Ahmad examined plaintiff on October 13, 2009 for knee pain, and noted no swelling but pain in the middle and bottom of the knee.[79]   Orthopedic surgeon Dr. Handley examined plaintiff on November 10, 2009, and diagnosed him with damage to the cartilage covering the back part of the knee cap, and not a dislocated knee.[80]   Dr. Handley ordered pain medication and a referral to the Brace and Limb Clinic; which Dr. Ahmad finalized.[81]   Dr. Naik prescribed physical therapy and a shoe lift, which apparently lessened plaintiff's pain.[82]

This uncontroverted record shows that Dr. Ahmad exercised his professional medical judgment in treating plaintiff's knee and that he was not deliberately indifferent to plaintiff's serious medical needs.   Assertions of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim.   Wilson v. Seiter, 501 U.S. 294, 297 (1991).   As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights.   See Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).

---

[77] Docket Entries No.67, Exhibits A-6 page 346;; A-11, page 351;No.81-2, page 3.

[78] No.67, Exhibit A-10, pages 312-15.

[79] Docket Entry No.81-2, page 4;. No.67, Exhibit A-10, page 298.

[80] Docket Entry No.81-2, page 5; No.67, Exhibit A-10, page 287; Exhibit A-10, page 284.

[81] Docket Entry No.81-2, page 5; No.67, Exhibit A-10, page 280-281, 285.

[82] Docket Entry No.81-2, pages 5-6; No.67, Exhibit A-10, pages 255, 263, 271, 274, Exhibit A-9, pages 222, 224, 235.

Likewise, the record does not show that plaintiff suffered substantial harm from any delay of appropriate treatment for his knee injury. *See* Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (stating that a delay in medical care can rise to the level of a constitutional violation if the delay results in substantial harm).

To the extent that plaintiff claims that Dr. Ahmad did not assist him in pursuing replacement contact lenses, the record shows otherwise. On numerous occasions, Dr. Ahmad advised plaintiff to pursue his request for contact lenses at a higher level.[83]

Plaintiff provides nothing to controvert defendants' summary judgment evidence, which shows that Dr. Ahmad was not deliberately indifferent to plaintiff's medical needs. Accordingly, defendants are entitled to summary judgment on this claim.

     e.   Conspiracy to Retaliate

Plaintiff attributes all of his physical injuries to a conspiracy to retaliate, which he claims Major Rice initiated and which he claims spanned across several TDCJ-CID Units.[84] Plaintiff surmises that he was subjected to such abuse because he had served six years of his sentence without incident prior to his issues with

---

83 Dr. Bowers further attests that plaintiff complained to Dr. Ahmad on May 22, 2009, that the optometrist would not prescribe contact lenses even though the ophthalmologist recommended them; Dr. Ahmad advised plaintiff to pursue the contact lenses at a higher level. Docket Entry No.81-2, page 3. On July 7, 2009, Dr. Ahmad advised plaintiff once again to contact senior medical personnel, including Dr. Owen Murray about the contact issue. Id. On July 31, 2009, Dr. Dumas reviewed plaintiff's ophthalmology and optometry notes and advised him that he was capable of working. Id., page 4. Dr. Ahmad referred plaintiff to ophthalmology in late October 2009. Id., page 5.

84 Docket Entry No.56, page 21.

Rice and because sympathetic officials told him that he was subjected to such abuse because of his service as a confidential informant, which Rice compromised, and his legal pursuit of Rice.[85]

State officials may not retaliate against an inmate for the exercise of a constitutionally protected right.  Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995).  To state a retaliation claim, an inmate "must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).  Mere conclusory allegations are insufficient to state a claim.  Woods, 60 F.3d at 1166.  The inmate must produce direct evidence of motivation or "allege a chronology of events from which retaliation may plausibly be inferred."  Id. quoting Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988).

Plaintiff, however, does not specify a constitutional right for which Rice intended to retaliate.  Plaintiff claims that Rice harassed and abused him for pursuing civil and criminal action against him, but plaintiff does not indicate that criminal charges were filed against Rice or that he filed any civil suit against Rice, except the present.[86]  Plaintiff also indicates that he complained to officers about Rice's harassment but he did not file timely grievances against Rice.  He complained to outside officials and TDCJ

---

85 Id.

86 Docket Entries No.56, pages 21-22; No.11-2, page 20.

administrators, which prompted an unfruitful investigation as to whether Rice assaulted him, but plaintiff makes no mention of this investigation as a possible motive for Rice's retaliation. Plaintiff suggests that Rice abused him because Rice was crazy and dangerous and out to get him;[87] he implies that Rice had a personal vendetta against him possibly because of plaintiff's prior law-enforcement career and his criminal conviction or his status as a confidential informant.[88]

Likewise, plaintiff's attempt to frame the acts and omissions of wardens, guards, doctors, investigators, administrators, and other personnel as a conspiracy to retaliate based on their purported professional relationship or friendship with Rice, is without a factual basis. Accordingly, plaintiff's conspiracy claim against Rice and all of the alleged conspirators is subject to dismissal.

  f. <u>Vicarious Liability</u>

Theories of vicarious liability, such as *respondeat superior*, cannot support a cause of action under section 1983. <u>Thompson v. Steele</u>, 709 F.2d 381 (5th Cir. 1983). A supervisory official "may be held liable if there exists either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." <u>Thompkins v. Belt</u>, 828 F.2d 298, 304 (5th Cir. 1987). To state an actionable claim, a civil rights plaintiff must establish

---

87 Docket Entry No.11-1, page 20.

88 Docket Entry No. 11-1, pages 26-30.

a causal connection between the acts or omissions of the defendant and the resultant constitutional deprivation.  Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir. 1981).

Most of plaintiff's claims against TDCJ-CID wardens, officers, administrators, medical administrators, and OIG investigators are conclusory.  Moreover, neither the record nor plaintiff's pleadings show that these defendants were personally involved in any act violating plaintiff's rights or their adoption of an illegal or wrongful policy that caused any constitutional deprivation. Accordingly, plaintiff's claims against these defendants are subject to dismissal.

### 2.   Punitive Damages

Even though plaintiff impugns an evil intent or a callous indifference to the alleged misconduct attributable to Major Rice and Sgt. Pizana, the record does not raise a genuine issue of material fact that they engaged in such misconduct or that any other defendant was motivated by the same.  Therefore, plaintiff is not entitled to punitive damages. See Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003) (noting punitive damages awarded where defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights").

### B.   Claims for Equitable Relief

Plaintiff's pleadings show that he has been transferred to the Boyd Unit; therefore, he is no longer entitled to injunctive or

declaratory relief from defendants on the Pack I, Darrington, Stevenson, and Jester III Units. *See* Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001). A prisoner may avoid dismissal of his equitable claims if he shows "either a 'demonstrated probability' or a 'reasonable expectation'" that he will be transferred back to the unit where the alleged violations occurred, or that he will be released and then re-incarcerated in the unit where the alleged violations occurred, Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002). Plaintiff makes no such claims.

Plaintiff also seeks a preliminary injunction and a temporary restraining order directing Brad Livingston, Rick Thaler, substituted for Nathaniel Quarterman, Pamela Williams, and Frank Anizan to transfer him to the Federal Bureau of Prisons because he does not feel safe in state prison.[89] To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *See* Planned Parenthood of Houston & Southeast Tex. v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005). Emphasizing its extraordinary character, the Fifth Circuit has cautioned that an injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on

---

[89] Docket Entry No.4.

all four requirements." PCI Transportation Inc. v. Fort Worth & Western R.R. Co., 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

Plaintiff has not raised genuine issues of material fact on the merits of his claims; nor has he shown that he will suffer an irreparable injury if an injunction is not granted. Plaintiff does not have a constitutional right to be confined in a particular location or to an institution outside of the Texas prison system. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). Nor has plaintiff shown that TDJC-CID cannot assure his safety. Compare Streeter v. Hopper, 618 F.2d 1178, 1182 (5th Cir. 1980) (directing a state prison system to remove inmates from a particular facility and to place them in an institution selected by the defendants, where their safety could be assured). Accordingly, plaintiff's request for preliminary injunction and a temporary restraining order is DENIED.

### III. CONCLUSION

Accordingly, the Court ORDERS the following:

1. The summary judgment motion filed by defendants Aftab Ahmad, Mark Clarke, Michael Edison, Ronald Givens, Brad Livingston, Thomas Merchant, Kenneth Negbenebor, Andres Pizana, David Rice, Weldon Roberts, Tony Samaniego, Mark Scheuerman, Edward Smith, Rick Thaler, and Pamela Williams is GRANTED. (Docket Entr7 No.65). All claims against these defendants are dismissed.

2. Plaintiff's claims against defendants Cary Staples, K. Steifer, Cynthia Tilley, Michael Jackson, FNU Pittman, Patricia Demerson, FNU Thompson, Carolyn Stephens, Michael Edison, Virginia Bauer, Martha Burgess, Frank

27

Anizan, FNU Herndanez, John M. Moriarty, FNU Pittman, FNU Romano, Mark Cole, Owen W. Murray, Dougals Appel, and Melinda Bozarth are DISMISSED pursuant to 28 U.S.C. § 1915A.

3.   Plaintiff's motion for a temporary restraining order and preliminary injunction (Docket Entry No.63) is DENIED.

4.   All other pending motions are DENIED.

SIGNED at Houston, Texas, on _____ June 20 _____, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

28